UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STATE OF NEW YORK and ERIC GONZALEZ,

                        Plaintiffs,

      v.

UNITED STATES IMMIGRATION AND CUSTOMS
ENFORCEMENT; MATTHEW T. ALBENCE, in his
official capacity as Acting Director of United States
Immigration and Customs Enforcement; UNITED STATES
DEPARTMENT OF HOMELAND SECURITY; and
KEVIN K. MCALEENAN, in his official capacity as
Acting Secretary of Homeland Security,

                        Defendants.

19 Civ. 8876 (JSR)

---

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION TO DISMISS

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2614/2721
Fax: (212) 637-2686
Email: rebecca.friedman@usdoj.gov
          tomoko.onozawa@usdoj.gov

REBECCA R. FRIEDMAN
TOMOKO ONOZAWA
Assistant United States Attorneys, *Of Counsel*

# TABLE OF CONTENTS

ARGUMENT ....................................................................................................................1

    A.    Plaintiffs' APA Claims Should Be Dismissed.......................................................1

        1.    Plaintiffs Fall Outside the Zone of Interests of the INA's Arrest
            Provisions.................................................................................................1

        2.    Plaintiffs' Claims Are Nonjusticiable Under the APA .............................2

        3.    The Directive Is a General Statement of Policy.......................................4

    B.    Plaintiffs' APA Claims Fail as a Matter of Law....................................................6

        1.    There Is No Common Law Privilege Against Federal Immigration
            Enforcement in Courthouses....................................................................6

        2.    The Comprehensive Immigration Scheme Displaces any Common
            Law Privilege Regarding Civil Immigration Enforcement Arrests ............8

    C.    Plaintiffs' Tenth Amendment Claim Must Be Dismissed ....................................10

CONCLUSION...............................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Air Brake Sys., Inc. v. Mineta*,
    357 F.3d 632 (6th Cir. 2004) ......................................................................... 5

*Arizona v. United States*,
    567 U.S. 387 (2012)............................................................................................. 8, 9

*Batalla Vidal v. Nielsen*,
    291 F. Supp. 3d 260 (E.D.N.Y. 2018) ............................................................. 2

*Bennett v. Spear*,
    520 U.S. 154 (1997)............................................................................................. 1

*Brause 59 Co. v. Bridgemarket Assocs.*,
    216 A.D.2d 200 (1st Dep't 1995) ..................................................................... 8

*Chick Kam Choo v. Exxon Corp.*,
    486 U.S. 140 (1988)........................................................................................... 10

*County of Oneida v. Oneida Indian Nation of N.Y.*,
    470 U.S. 226 (1985)........................................................................................... 9

*Cunningham v. Neagle*,
    135 U.S. 1 (1890)............................................................................................... 10

*De Dandrade v. U.S. Dep't of Homeland Security*,
    367 F. Supp. 3d 174 (S.D.N.Y. 2019)............................................................. 2

*Dep't of Hous. Pres. & Dev. of City of New York v. Koenigsberg*,
    133 Misc. 2d 893, 509 N.Y.S.2d 270 (Civ. Ct. 1986) ..................................... 7

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000)........................................................................................... 9

*Heckler v. Chaney*,
    470 U.S. 821 (1985)........................................................................................... 2, 3

*In re Arthur Treacher's Franchise Litig.*,
    92 F.R.D. 398 (E.D. Pa. 1981)......................................................................... 7

*In re Tarble*,
    80 U.S. 397 (1871)............................................................................................. 10

*In re Thompson*,
    122 Mass. 428 (1877) ........................................................................................ 6

*Jennings v. Rodriguez,*
    138 S. Ct. 830 (2018)..........................................................................................8

*Kaufman v. Kaye,*
    466 F.3d 83 (2d Cir. 2006).............................................................................10

*Light Tech., Inc. v. N. Lights Club,*
    236 F.3d 57 (1st Cir. 2001)..............................................................................7

*Merigone v. Seaboard Capital Corp.,*
    85 Misc. 2d 965, 381 N.Y.S.2d 749 (Sup. Ct. 1976).......................................8

*Nachwalter v. Christie,*
    805 F.2d 956 (11th Cir. 1986) .........................................................................9

*Nat'l Min. Ass'n v. McCarthy,*
    758 F.3d 243 (D.C. Cir. 2014) .........................................................................4

*Netograph Mfg. Co. v. Scrugham,*
    197 N.Y. 377 (1910) ........................................................................................6

*New York v. U.S. Dep't of Homeland Sec.,*
    No. 19 Civ. 7777 (GBD), 2019 WL 5100372 (S.D.N.Y. Oct. 11, 2019) .........2

*Norton v. S. Utah Wilderness,*
    542 U.S. 55 (2004)...........................................................................................5

*O'Shea v. Littleton,*
    414 U.S. 488 (1974)........................................................................................10

*Pearl River Union Free Sch. Dist. v. King,*
    214 F. Supp. 3d 241 (S.D.N.Y. 2016).............................................................5

*Person v. Grier,*
    66 N.Y. 124 (1876) ......................................................................................6, 7

*Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods,*
    886 F.2d 419 (D.C. Cir. 1989).........................................................................3

*Salazar v. King,*
    822 F.3d 61 (2d Cir. 2016)...............................................................................1

*Stewart v. Ramsay,*
    242 U.S. 128 (1916).........................................................................................6

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015) ...........................................................................1

*Treats Int'l Enterprises v. S.E.C.*,
    828 F. Supp. 16 (S.D.N.Y. 1993) ................................................................................. 2, 8

*Webster v. Doe*,
    486 U.S. 592 (1988) ....................................................................................................... 4

*Younger v. Harris*,
    401 U.S. 37 (1971) ....................................................................................................... 10

*Zirinsky v. Zirinsky*,
    77 Misc. 2d 954 (Sup. Ct., N.Y. Cnty. 1974) ................................................................ 6

## **Statutes**

5 U.S.C. § 551(13) ................................................................................................................... 5

8 U.S.C. § 1229(e) .......................................................................................................... 5, 8, 9

8 U.S.C. § 1252 ....................................................................................................................... 1

8 U.S.C. § 1357 ................................................................................................................... 3, 8

8 U.S.C. § 1621(a) ................................................................................................................. 2

8 U.S.C. § 1226 ............................................................................................................. 1, 3, 8

## ARGUMENT

### A.    Plaintiffs' APA Claims Should Be Dismissed[1]

#### 1.    Plaintiffs Fall Outside the Zone of Interests of the INA's Arrest Provisions

Contrary to their arguments, *see* Pls.' Mem. of Law in Opp. to Defs.' Mot. to Dismiss [Dkt. No. 33] ("Pls.' Opp.") at 3, Plaintiffs do not fall within the "zone of interests" of the INA's civil arrest provisions.  To bring a claim under the APA, Plaintiffs must "assert interests that are arguably within the zone of interests to be protected or regulated by the statute [they] claimed was violated."  *Salazar v. King*, 822 F.3d 61, 73 (2d Cir. 2016).  Moreover, "[w]hether a plaintiff's interest is 'arguably . . . protected . . . by the statute' within the meaning of the zone-of-interests test is to be determined not by reference to the overall purpose of the Act in question . . . but by reference to the particular provision of law upon which the plaintiff relies."  *Bennett v. Spear*, 520 U.S. 154, 175–76 (1997).

Here, Plaintiffs assert that ICE exceeded its statutory authority under the INA to conduct civil arrests, Compl. ¶¶ 31, 126 (citing 8 U.S.C. §§ 1226(a), 1357(a)(2)), in a way that impacted their interest in "effective law enforcement and the proper functioning of their court system," *see* Pls.' Opp. at 4.  However, nothing in the plain language of sections 1226(a) and 1357(a)(2), or the INA generally, evinces *any* intent to permit suit by anyone other than the alien subject to civil arrest to enforce those rights, *see* 8 U.S.C. § 1252, or speaks to the right to bring an action for "effective law enforcement" of state prosecutors and the "proper functioning" of state courts.[2]

---

[1] The abbreviations used in Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defs.' Mem.") [Dkt. No 26] are continued herein.

[2] The cases cited by Plaintiffs on this issue are distinguishable from the facts of this case.  *See Texas v. United States*, 809 F.3d 134, 163 (5th Cir. 2015) (Plaintiff States were within INA's zone of interests to enjoin implementation of Deferred Action for Parents of Americans and Lawful Permanent Residents based on allegations that expanding eligibility for state benefits to otherwise ineligible aliens would cause economic injury, because "Congress has *explicitly*

Plaintiffs cannot point to any right of their own under the INA that is affected by civil enforcement actions against third-party aliens inside state courthouses, and any harms they allege are derivative of those actions.  This is precisely the sort of claim that the zone of interests test is designed to foreclose.  *See De Dandrade v. U.S. Dep't of Homeland Security*, 367 F. Supp. 3d 174, 188–90 (S.D.N.Y. 2019) (non-profit organizations that brought APA challenge to DHS process of waiving requirement that legal permanent residents pass English language and civics exams to obtain citizenship were not within INA's "zone of interests," where plaintiffs "d[id] not point to any provisions of the INA or its legislative history which indicate that Congress intended to protect the interests of advocacy groups representing clients at immigration hearings").

### 2.    Plaintiffs' Claims Are Nonjusticiable Under the APA

Plaintiffs are wrong in arguing that their challenge to the Directive is justiciable under the APA.  *See* Pls.' Opp. at 5-8.  "[B]efore any review at all may be had [under the APA] a party must first clear the hurdle of § 701(a)."  *Heckler v. Chaney*, 470 U.S. 821, 828 (1985).  In determining whether a "meaningful standard" exists for judicial review of agency action, "courts have considered the statutory language and structure, the statutory history, the nature of the agency action, and the regulations promulgated under the statute."  *Treats Int'l Enterprises v. S.E.C.*, 828 F. Supp. 16, 18 (S.D.N.Y. 1993) (citing cases).  Plaintiffs have failed to identify any such "meaningful standard" here.

Contrary to Plaintiffs' assertions, the so-called common-law privilege against civil arrests

---

*allowed* states to deny public benefits to illegal aliens") (citing 8 U.S.C. § 1621(a)) (emphasis added); *New York v. U.S. Dep't of Homeland Sec.*, No. 19 Civ. 7777 (GBD), 2019 WL 5100372, at *5 (S.D.N.Y. Oct. 11, 2019) (State plaintiffs within zone of interests to challenge final rule which redefined statutory definition of "public charge" and "public benefit," because of "INA's *direct reference* to states' roles as benefit administrators") (emphasis added); *Batalla Vidal v. Nielsen*, 291 F. Supp. 3d 260, 269 n.3 (E.D.N.Y. 2018) (State plaintiffs within zone of interests to challenge rescission of DACA and loss of accompanying work authorizations, because DACA recipients were state employees).

in or near courthouses, the Tenth Amendment, and unspecified "general requirements of reasoned agency decisionmaking" do not provide judicially manageable standards for this Court to apply to assess ICE's discretionary decisions regarding where and where not to undertake civil immigration enforcement actions. Pls.' Opp. at 6. Indeed, Plaintiffs concede that "although the INA contains two provisions that authorize arrests, *see* 8 U.S.C. § 1226(a) (arrests with warrant); § 1357(a)(2) (arrests without a warrant), neither of them mentions courthouses at all," Compl. ¶ 126, let alone specifies any judicially-manageable standard for categorically excluding specific public locations from authorized civil immigration enforcement activities.

Plaintiffs also assert that the INA has "a number of restrictions that are judicially enforceable, including the requirement that the alien be present in violation of a law or regulation regarding the admission or removal of aliens, and the requirement that the alien be 'likely to escape before a warrant can be obtained,'" Pls.' Opp. at 6 (quoting 8 U.S.C. § 1357(a)(2)), but these restrictions limit *who* may be subject to a civil immigration enforcement action, not *where* that action may occur. Determinations regarding arrest locations are made on a case-by-case basis and consider the totality of the circumstances—*e.g.,* the target's criminal history, safety considerations, and the nature of the contemplated arrest location—which entail a "complicated balancing of a number of factors which are peculiarly within [the agency's] expertise." *Heckler*, 470 U.S. at 831. Plaintiffs' APA challenge therefore should be dismissed, because they have failed to identify any meaningful standard by which this Court can determine where a civil arrest should or should not take place.[3]

---

[3] Contrary to Plaintiffs' assertion, application of *Heckler* and its progeny is not limited to "specific enforcement or charging decisions," Pls.' Opp. at 7 n.1, but rather encompasses a variety of challenged agency actions where the governing statute or regulations provide no meaningful standard of review of discrete agency actions. *See, e.g., Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods*, 886 F.2d 419, 431 (D.C. Cir. 1989) (per

### 3.    The Directive Is a General Statement of Policy

Plaintiffs mischaracterize the Directive as "intend[ing] to make a sharp change in ICE's arrest policy from its past practice." Pls.' Opp. at 9. ICE has had a policy of undertaking enforcement actions at or near courthouses since at least 2014, *see* Defs.' Mem. at 3–4, and the Directive merely revised that policy in January 2018 with respect to "civil immigration enforcement actions inside . . . courthouses." Directive, at 1. The Directive does not *require* ICE officers to arrest aliens inside a courthouse for the first time, *see* Pls.' Opp. at 9; rather, it provides internal guidance to officers who are considering whether (and how) to undertake a civil immigration enforcement action inside a courthouse, against the backdrop of ICE's long-standing discretion to "make enforcement determinations on a case-by-case basis in accordance with federal law and consistent with [DHS] policy." Directive, at 1 n.1.

The law is clear that "[a]n agency action that purports to impose legally binding obligations or prohibitions on regulated parties—and that would be the basis for an enforcement action for violations of those obligations or requirements," is a final agency action. *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014). Conversely, "[a]n agency action that merely explains how the agency will enforce a statute or regulation—in other words, how it will exercise its broad enforcement discretion or permitting discretion under some extant statute or rule—is a general statement of policy" that is not subject to APA review. *Id.* at 252. The Directive squarely falls in the latter category. Nothing in the Directive tells "regulated entities" or "regulated parties" "what they must do or may not do in order to avoid liability." *Id. See also*

---

curiam) (Silberman, J., concurring) (dismissing APA challenge to composition of federal advisory committee, because Federal Advisory Committee Act ("FACA") provided no judicially manageable standards for determining whether committee membership was "fairly balanced" under FACA); *Webster v. Doe*, 486 U.S. 592, 600 (1988) (employee's termination under National Security Act not reviewable under APA because there was no "basis on which a reviewing court could possibly assess an Agency termination decision").

*Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 641 (6th Cir. 2004) ("[a]n agency's determination of 'rights or obligations' generally stems from an agency action that is directly binding on the party seeking review"). Although Plaintiffs assert that "the impact of the challenged action on the parties" renders the Directive reviewable under the APA, Pls.' Opp. at 9 (citation omitted), this is not dispositive of the issue, because "adverse . . . effects accompany many forms of indisputably non-final government action . . . but that does not make the agency's action final." *Air Brake Sys.,* 357 F.3d at 645 (citing cases).

Finally, Plaintiffs have not identified a discrete "final agency action" governing civil arrests *outside* courthouses. While acknowledging that the Directive does not address ICE arrests "outside" or "near" courthouses, Plaintiffs nonetheless insist that there is a reviewable "final agency action" relating to arrests outside courthouses. Pls.' Opp. at 10. But "'[a]gency action' includes the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). *See also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (holding that challenge to agency action may proceed under APA only if the agency action is "discrete"). By contrast, ICE's practice of conducting civil arrests outside courthouses existed long before the Directive was issued in January 2018. *See* Defs.' Mem. at 3–4; *see also* 8 U.S.C. § 1229(e)(1), (2) (2006). "Because an on-going program or policy is not, in itself a 'final agency action' under the APA, [this Court's] jurisdiction does not extend to reviewing generalized complaints about agency behavior." *Pearl River Union Free Sch. Dist. v. King*, 214 F. Supp. 3d 241, 261 (S.D.N.Y. 2016) (quoting *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006)).

B.    **Plaintiffs' APA Claims Fail as a Matter of Law**

1.    **There Is No Common Law Privilege Against Federal Immigration Enforcement in Courthouses**

Plaintiffs mistakenly argue that a civil arrest privilege dating from fifteenth century England was presumptively incorporated into the INA, and that the Directive violates this "long recognized" privilege. Pls.' Opp. at 16–23. In many of the cases Plaintiffs cite, if arrest is mentioned, it is about an arrest that occurred as part of civil service of process, not the type of arrest at issue here. *See Person v. Grier*, 66 N.Y. 124, 125 (1876) (protecting "suitors and witnesses from arrests upon civil process while coming to and attending the court and while returning home"); *In re Thompson*, 122 Mass. 428, 428 (1877) (discussing "arrest on civil process"). Plaintiffs similarly contend that there is "no basis for reading th[e] broad" privilege laid out in *Stewart v. Ramsay*, 242 U.S. 128 (1916), as "applying only to service of process and not to . . . civil arrests." Pls.' Opp. at 19. But *Stewart* is about service of process, and holds that "suitors, as well as witnesses, coming from another state or jurisdiction, are exempt from the service of civil process while in attendance upon court, and during a reasonable time in coming and going" 242 U.S. at 129. Plaintiffs' cited cases thus are an artifact from when civil arrest initiated suit between parties. Defs.' Mem. at 15 n.5, 18.

To the extent Plaintiffs rely on English cases for an arrest privilege, New York courts have focused on the privilege protecting parties who voluntarily enter the jurisdiction, and have rejected broader statements of the privilege. *See, e.g.*, Defs.' Mem. 15 n.4; *Netograph Mfg. Co. v. Scrugham*, 197 N.Y. 377, 382 (1910) ("We are aware that this view is apparently at variance with some decisions in other jurisdictions, notably in England, but we think the administration of justice will be best subserved by keeping the rule of privilege within the reason upon which it rests."); *Zirinsky v. Zirinsky*, 77 Misc. 2d 954, 956 (Sup. Ct., N.Y. Cnty. 1974) (noting

"conflicting decisions" on the privilege, and that one can find "almost any dictum that one may be looking for") (internal quotation marks and citation omitted).

Plaintiffs argue (citing *Person*, 66 N.Y. at 126) that Defendants incorrectly state that the arrest privilege does not apply to non-residents. Pls.' Opp. at 20. But *Person* is a service of process case, and in that context, the court discusses protecting a party that comes forward without the protection of their jurisdiction of residence. *See Person*, 66 N.Y. at 127. More broadly, as Plaintiffs acknowledge, one of the main purposes of the privilege is to encourage witnesses to come forward voluntarily. Pls.' Opp. at 20. Consistent with that purpose, the privilege treated residents and non-residents differently for purposes of service of process—*i.e.*, where the distinction mattered. *See* Defs.' Mem. at 14–16. Another "core rationale" for the privilege that Plaintiffs cite, protecting the court from disturbances, Pls.' Opp. at 19, proves too much as courts have allowed for criminal arrests and service of process in court proceedings. *See In re Arthur Treacher's Franchise Litig.*, 92 F.R.D. 398, 405 n.2 (E.D. Pa. 1981) (serving process during testimony break was "provocative" and an "oversight in courtesy," but refusing to dismiss the case because defendant could have been served pursuant to long arm statute); Compl. ¶ 7.[4]

The privilege is also one that is subject to limitations. *See N. Light Tech., Inc. v. N. Lights Club*, 236 F.3d 57, 63 (1st Cir. 2001) (acknowledging privilege limitations, and noting that it "should not be enlarged beyond the reason upon which it is founded"). One limitation is that the privilege has not been applied to protect service of process in a criminal suit. *See* Defs.' Mem. at 17 (discussing *Conley* and *Ex. Parte Lamar*). In addition, courts have routinely held

---

[4] *See also Dep't of Hous. Pres. & Dev. of City of New York v. Koenigsberg*, 133 Misc. 2d 893, 899, 509 N.Y.S.2d 270, 274 (Civ. Ct. 1986) ("The court disapproves of the manner of the service of process in the four cases where it was accomplished in the courthouse; however, the disapproval does not deprive the court of jurisdiction. The actions will not be dismissed.").

that the privilege does not apply to parties that could have been served through other means. *Id.* at 16–17; *see Brause 59 Co. v. Bridgemarket Assocs.*, 216 A.D.2d 200, 201 (1st Dep't 1995) ("Since it cannot be disputed that personal jurisdiction over defendant Baldwin could have been obtained by serving him outside of New York . . . , he cannot avail himself of the doctrine of immunity in this matter.").[5] Here, given the federal government's plenary power over immigration and that aliens may be served in any jurisdiction, the rationale behind the privilege does not apply.

### 2. The Comprehensive Immigration Scheme Displaces any Common Law Privilege Regarding Civil Immigration Enforcement Arrests

Even assuming a privilege exists with respect to courthouse arrests, Congress established a comprehensive system regarding immigration arrests displacing any federal common law privilege.[6] To the extent Plaintiffs disclaim reliance on federal common law and rely exclusively on state common law, Pls.' Opp. at 11, state common law cannot override federal statutory law such as the federal government's ability to conduct immigration enforcement actions, something within its "broad, undoubted power." *Arizona v. United States*, 567 U.S. 387, 394 (2012).

Congress spoke directly to immigration arrests in the INA, 8 U.S.C. §§ 1226, 1357(a).[7] In addition, Congress amended the INA in 2006 to add 8 U.S.C. § 1229(e) in order to provide procedures that DHS must follow if it undertakes "an enforcement action leading to a removal

---

[5] *See also Merigone v. Seaboard Capital Corp.*, 85 Misc. 2d 965, 967, 381 N.Y.S.2d 749, 751 (Sup. Ct. 1976) ("An out-of-stater who is otherwise readily amenable to service does not need this rule to encourage his in-state appearance, and so he cannot claim its protection.").

[6] As Defendants argued, there is no federal common law privilege against immigration arrests because federal courts cannot create their own common law where Congress has already addressed the issue. Defs.' Mem. at 19–20.

[7] 8 U.S.C. § 1357 provides for specific location-based exceptions (not applicable here), and those exceptions imply that an immigration officer's arrest power is not restricted at other locations. *Jennings v. Rodriguez*, 138 S. Ct. 830, 844 (2018) (applying the negative-implication canon).

proceeding" "at a courthouse (or in connection with that appearance of the alien at a courthouse)." 8 U.S.C. § 1229(e)(1), (2). That requirement confirms that Congress was aware of the practice of immigration arrests at courthouses and spoke directly to that issue. Therefore, the statutory scheme displaces any common law privilege on arrests at or near courthouses, to the extent it exists. Defs.' Mem. at 19–20.

Plaintiffs mistakenly assert that 8 U.S.C. § 1229(e) relates only to criminal arrests, Pls.' Opp. at 14, even though the statute applies to "removal proceedings" and "[r]emoval is a civil, not criminal, matter." *Arizona*, 567 U.S. at 396. Plaintiffs also argue that 8 U.S.C. §1229(e) should have "little bearing" on Congressional intent regarding courthouse arrests since it was "passed decades" later. Pls.' Opp. at 14–15. However, courts have considered later statutes in considering the Congressional intent and purpose of prior enacted statutes. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("[T]he meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand"); *County of Oneida v. Oneida Indian Nation of N.Y.*, 470 U.S. 226, 239 (1985) (relying on statutory developments "subsequent to the enactment" of the statute to hold that the Act did not pre-empt the Indians' common law rights because later amendments "contemplated suits by Indians asserting their property rights").

Plaintiffs' argument that in light of the *state* common law and historic state powers, Congress needed to make its intention to displace the common law "unmistakably clear," Pls.' Opp. at 13–14, is also unavailing. Because the INA specifically addresses immigration arrests, under the Supremacy Clause, "federal courts may not use state common law to re-write a federal statute." *Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir. 1986). Morever, contrary to Plaintiffs' argument, Defendants are not contending that the federal government's regulatory

authority over aliens allows it to disregard *any* state law.  Pls.' Opp. at 15.  Here, the federal government is not telling the state to enforce or not to enforce state law—instead, it is exercising discretion to arrest aliens in public spaces in and around courthouses, and federal law does not contemplate restrictions on ICE's ability to effect such arrests.  Given the plenary federal power over immigration, the state cannot bar the federal government from arresting aliens in public places.  *See Cunningham v. Neagle*, 135 U.S. 1, 58 (1890) (a federal officer cannot be arrested by state officials for acting in discharge of their duties); *In re Tarble*, 80 U.S. 397, 404 (1871) (state court lacks jurisdiction "to interfere with the authority of the United States, whether that authority be exercised by a Federal officer or be exercised by a Federal tribunal").

## C.    Plaintiffs' Tenth Amendment Claim Must Be Dismissed

Plaintiffs incorrectly state that "Defendants' sole argument" for dismissal of the Tenth Amendment claim is that the Directive in no way commandeers state or local officials.  Pls.' Opp. at 23.  First, Defendants lay out the governing anti-commandeering principles, Defs.' Mem. at 24–25, which Plaintiffs failed to rebut.  Second, Defendants explained that Plaintiffs' claim that the Directive offends the Tenth Amendment because it disregards New York's ability to regulate its court system ignores the plenary federal power over immigration.  *Id.* at 25.  Plaintiffs' cases (Pls.' Opp. at 24) are inapposite as they involved direct challenges to the state judiciary system.[8]  Here, the federal government is not directly intervening in state court, nor is it purporting to regulate states or their judicial systems; rather, it is exercising its discretion, as authorized by the INA, to undertake civil enforcement actions in relation to courthouses.

---

[8] *See Younger v. Harris*, 401 U.S. 37, 41 (1971) (challenge to district court's judgment enjoining state prosecution); *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 142 (1988) (considering whether injunction prohibiting litigation of matter in state court was permissible); *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974) (request for injunction controlling future state criminal proceedings, which would functionally serve as "ongoing federal audit" of state proceedings); *Kaufman v. Kaye*, 466 F.3d 83, 84 (2d Cir. 2006) (challenging procedure of assigning appeals among panel of judges in state court).

**CONCLUSION**

Defendants respectfully request that the Court dismiss Plaintiffs' complaint in its entirety.

Dated: November 13, 2019
New York, New York

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By:    /s/ Tomoko Onozawa
REBECCA R. FRIEDMAN
TOMOKO ONOZAWA
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:   (212) 637-2614/2721
Fax:   (212) 637-2686
Email: rebecca.friedman@usdoj.gov
tomoko.onozawa@usdoj.gov