UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STATE OF NEW YORK et al.,

                    Plaintiffs,

        v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT et al.,

                    Defendants.

Case No. 19-cv-8876 (JSR)
Honorable Jed S. Rakoff

---

**BRIEF OF *AMICI* STATES WASHINGTON, CONNECTICUT, ILLINOIS, MARYLAND, MASSACHUSETTS, MINNESOTA, NEW JERSEY, NEW MEXICO, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, VIRGINIA, AND THE DISTRICT OF COLUMBIA IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGEMENT**

Rahul Rao
Assistant Attorney General
Washington State Attorney General's Office
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 442-4499
(206) 587-4229 (Fax)
Rahul.Rao@atg.wa.gov

*Counsel for Amici Curiae*

**TABLE OF CONTENTS**

I.      INTERESTS OF AMICI ................................................................................................1

II.     ARGUMENT .............................................................................................................1

        A.   Defendants' Courthouse Immigration Arrest Policy Has Seriously Interfered
             with State Court Proceedings ...........................................................................1

        B.   Residents, Wary of Defendants' Courthouse Activities, Avoid State
             Courthouses ....................................................................................................5

        C.   The Tenth Amendment Prohibits Defendants From Impairing New York's
             Sovereign Judicial System and Usurping State Court Facilities .............................8

III.    CONCLUSION ..........................................................................................................9

# TABLE OF AUTHORITIES

## Cases

*Bond v. United States*,
  572 U.S. 844 (2014)....................................................................................8

*Garcia v. San Antonio Metro. Transit Auth.*,
  469 U.S. 528 (1985)....................................................................................8

*Gonzales v. Oregon*,
  546 U.S. 243 (2006)....................................................................................8

*Gregory v. Ashcroft*,
  501 U.S. 452 (1991)....................................................................................8

*Murphy v. NCAA*,
  138 S. Ct. 1461 (2018)............................................................................8, 9

*Nat'l Fed. of Indep. Bus. (NFIB) v. Sebelius*,
  567 U.S. 519 (2012)....................................................................................9

*Ryan v. U.S. Immigration & Customs Enf't*,
  382 F. Supp. 3d 142 (D. Mass. 2019)....................................................4, 7

*Steward Mach. Co. v. Davis*,
  301 U.S. 548 (1937)....................................................................................9

*Texas v. White*,
  7 Wall. 700 (1869)......................................................................................8

*Younger v. Harris*,
  401 U.S. 37 (1971)......................................................................................8

## Other Authorities

Chief Justice Lloyd A. Karmeier, *ICE Arrests Threaten to Chill Access to Justice*,
  Illinois Courts Connect (Aug. 28, 2017), http://www.illinoiscourts.gov/Media/enews/
  2017/082517_chief_justice.asp..........................................................................4

*ICE in the New Jersey Courts: The Impact of Immigration Enforcement on Access to
  Justice in the Garden States*, Make the Road New Jersey, 3 (Dec. 2017), https://d3n8a
  8pro7vhmx.cloudfront.net/maketheroadnj/pages/70/attachments/original/1513001085/
  ICE_in_the_Courts_Data_-_final_Dec_10__2017.pdf?1513001085 ................................5, 7

James Madison, *The Federalist No. 39*
   (B. Wright ed., 1961) ...................................................................................................8

Julie Johnson, *ICE agents arrest 3 at Sonoma County courthouse*,
   The Press Democrat (Feb. 18, 2020), https://www.pressdemocrat.com/news/
   10723593-181/ice-agents-arrest-3-at.................................................................................3

Kathleen Masterson, *ICE arrests dairy worker en route to Burlington courthouse*,
   Vt. Public Radio (Mar. 16, 2017), https://www.vpr.org/post/ice-agents-arrest-
   dairy-worker-en-route-burlington-courthouse#stream/0........................................................5

Katy Barnitz, *ACLU seeks video of ICE arrest at courthouse*,
   Albuquerque Journal (Aug. 14, 2019), https://www.abqjournal.com/1353537/
   aclu-seeks-video-of-ice-arrest-at-courthouse-lawsuit-argues-courts-refusal-to-
   release-footage-is-improper.html...................................................................................4

*Obstructing Justice: The Chilling Effect of ICE's Arrests of Immigrants at Pennsylvania*
   *Courthouses*, Stephen and Sandra Sheller Center for Social Justice,
   Temple University Beasley School of Law, 6 (Jan. 30, 2019), https://www2.law.
   temple.edu/csj/cms/wp-content/uploads/2019/02/Obstructing-Justice-rev.pdf.......................5

Paul Bass & Sam Gurwitt, *Another ICE Courthouse Arrest Interrupted*,
   New Haven Independent (Dec. 19, 2019.), https://www.newhavenindependent.org/
   index.php/archives/entry/ice_courthouse_arrest_thwarted.................................................3

## I.      INTERESTS OF AMICI

Like the State of New York, Amici States[1] have a solemn responsibility to operate civil and criminal justice systems that are impartial, just, and open to all. Also like New York, the Amici States must rely on the trust and participation of parties, victims, witnesses, and the public in order to ensure the fair administration of justice, effectively prosecute crime, and protect public safety.

Defendants' policy of conducting civil immigration arrests in and around state and local courthouses strikes at the heart of these sovereign interests. Since 2017, Defendants' policy, including ICE Directive Number 11072.1 (the Courthouse Civil Arrest Directive), has resulted in a dramatic increase in the arrest of parties, witnesses, family members, and others seeking to access the Amici States' court systems and services. The resulting chilling effect deters victims from seeking potentially life-saving protections, dissuades witnesses from appearing in court, threatens the viability of criminal prosecutions, and forces state residents to choose between the risk of arrest and foregoing their right to access the courts. Worst of all, the Courthouse Civil Arrest Directive undermines public safety and erodes community trust in state courts.

Amici States respectfully submit this brief with a focus on the harmful interference inflicted by the Civil Courthouse Directive on Amici States' sovereign justice systems, and the resulting Tenth Amendment violation. Amici urge the Court to grant New York's motion on all claims, including the Tenth Amendment claim.

## II.      ARGUMENT

### A.      Defendants' Courthouse Immigration Arrest Policy Has Seriously Interfered with State Court Proceedings

State courts handle millions of cases each year in a wide range of matters, including criminal prosecutions, family law matters, domestic violence protection proceedings, labor and employment claims, housing and tenant-rights cases, small claims, and a variety of other civil matters. Many of these matters are critical to the health and safety of state residents. State judicial

---

[1] For ease of reference, the District of Columbia is referred to herein as a "State."

proceedings in Amici States have been significantly disrupted by immigration arrests at or near state courthouses, undermining many of our residents' access to the courts.

In Washington, the Department of Homeland Security (DHS) has admitted to making hundreds of arrests at or near courthouses since 2017.[2] These arrests occur statewide, in the courtrooms, hallways, parking lots, sidewalks, courtyards, and on the front steps of local courthouses.[3] These arrests cause confusion and alarm because DHS agents almost always wear plain clothes, do not identify themselves, and provide no warrant or explanation for their conduct, making it difficult for bystanders, including judges, courthouse personnel, and local law enforcement officers, to understand what is happening.[4] Agents have chased, tackled, dragged and used force against immigrants during courthouse arrests.[5] For example, in June 2019, several plain-clothed men forcibly arrested a man outside the Thurston County courthouse after he appeared for a court hearing. Only after the initial altercation did court staff and bystanders understand that the men were ICE agents, when badges were seen peeking out from underneath the agents' clothing. Several witnesses were shocked to see this struggle and the amount of force used.[6] The Thurston County District Court Presiding Judge noted that the arrest "ha[d] all the hallmarks of a kidnapping," and that violence easily could have resulted if a bystander or court staff member had tried to intervene.[7] Evidence of other DHS arrests in Washington likewise recount arrests involving "escalated physical tactics" that create a "public disturbance."[8]

Incidents of this nature occur nationwide. In California, as recently as February 18, 2020, U.S. Immigration and Customs Enforcement (ICE) arrested at least three individuals at the Sonoma County Courthouse without notice to or coordination with local officials, disrupting the court day

---

[2] *Washington v. U.S. Dep't of Homeland Sec., et al.,* No. 2:19-cv-02043-TSZ (W.D. Wash. Dec. 18, 2019), ECF No. 95 at 7 (admitting to 216 arrests in Washington State from 2017 to 2019).

[3] *Id.* at ECF No. 1 ¶ 2.

[4] *Id.* at ECF No. 1 ¶¶ 21, 50-51, 88; ECF No. 6 at 4, 20.

[5] *Id.* at ECF No. 18 ¶¶ 5, 13; ECF No. 26 ¶¶ 7, 12; ECF No. 38 ¶ 13; ECF No. 39 ¶ 6; ECF No. 41 ¶¶ 5-6; ECF No. 42 ¶¶ 4-5.

[6] *Id.* at ECF No. 47 ¶ 8.

[7] *Id.* at ECF No. 13 ¶ 6 (Declaration of Presiding Judge Brett Buckley).

[8] *Id.* at ECF No. 18 ¶¶ 5, 13.

and preventing those individuals from appearing for pending criminal matters.[9] ICE conducted its operations in spite of California state law that protects individuals attending court from warrantless arrest at court.[10]

In Oregon, ICE arrested a man in June 2018 outside a Washington County courtroom following a hearing in his case. The judge described the scene in a letter to the Chief Justice of the Oregon Supreme Court:

> Many people were screaming, bodies were slamming against the walls, it was clear that some manner of fighting was going on, and it appeared that someone (a female) was in anguish or pain. But we had no idea what was happening or who was involved. . . .
>
> ICE agents . . . placed the security of this court, and those before it, in an untenable and unacceptable position. Their actions to lie in wait on the third floor of the courthouse and ambush a non-violent defendant during one of our busiest dockets directly jeopardized the safety of everyone involved. And, the disruption was significant.[11]

In another Oregon case, ICE arrested a father of three at the Washington County Courthouse who was attempting to pay a ticket for driving without a license.[12]

In Milford, Connecticut, in December 2019, a Deferred Action for Childhood Arrivals (DACA) recipient was confronted by ICE agents in the courthouse lobby, cuffed, and threatened with arrest.[13] She was released after proving that she was lawfully present under DACA, but the incident provoked a confrontation between ICE agents and immigration advocates at the courthouse.

---

[9] *See* Julie Johnson, *ICE agents arrest 3 at Sonoma County courthouse*, The Press Democrat (Feb. 18, 2020), https://www.pressdemocrat.com/news/10723593-181/ice-agents-arrest-3-at.

[10] *Id.*

[11] Letter from Chief Criminal Judge Andrew R. Erwin (June 1, 2018) (a copy of the letter is on file with counsel).

[12] Decl. of Kayse Jama ¶ 6 (a copy of the declaration, which was submitted to the Chief Justice of the Oregon Supreme Court as part of a petition ("Oregon Petition") for adoption of a rule prohibiting warrantless courthouse civil arrests, is on file with counsel).

[13] *See* Paul Bass & Sam Gurwitt, *Another ICE Courthouse Arrest Interrupted*, New Haven Independent (Dec .19, 2019), https://www.newhavenindependent.org/index.php/archives/entry/ice_courthouse_arrest_thwarted.

In Illinois, there have been dozens of arrests at Illinois courthouses since 2017, including inside courtrooms in Skokie, Cook, Champaign, and Kane counties. For example, in April 2017, ICE agents arrested a father at the DuPage County Courthouse who was there to finalize an adoption. The arrested father was subsequently deported to Mexico.[14]

Massachusetts has also had similar incidents. At the Somerville District Court, a fistfight broke out between ICE agents and their target for arrest, requiring court security officers to intervene.[15] At the Roxbury District Court, ICE agents contacted a criminal defendant at a pretrial hearing and asked for identification.[16] During the hearing, six ICE agents sat behind the defendant whispering to him that they were going to get him as soon as the hearing ended. The defendant fainted during the hearing due to the stress of the situation. The agents did not have a warrant or detainer. The defendant was released, but did not appear at his next hearing, even though the case was likely to be dismissed.[17]

In New Mexico, in February 2019, ICE agents detained a student at Bernalillo County's Metropolitan Court who was facing a driving under the influence charge. He was lawfully in the United States on a student visa. He was taken to a holding cell and told he would be deported even though he had directed the agents to his sponsor at the University of New Mexico. He was subsequently released.[18]

In Passaic, New Jersey, a parent at court for a hearing to determine if the parent's children would be returned to the parent from foster care was arrested in the courtroom by ICE agents. After

---

[14] Chief Justice Lloyd A. Karmeier, *ICE Arrests Threaten to Chill Access to Justice*, Illinois Courts Connect (Aug. 28, 2017), http://www.illinoiscourts.gov/Media/enews/2017/082517_chief_justice.asp.

[15] *Ryan v. U.S. Immigration & Customs Enf't*, 382 F. Supp. 3d 142, 151 (D. Mass. 2019).

[16] *Id.*, ECF. No. 1 ¶ 57.

[17] *Id.*

[18] Katy Barnitz, *ACLU seeks video of ICE arrest at courthouse*, Albuquerque Journal (Aug. 14, 2019), https://www.abqjournal.com/1353537/aclu-seeks-video-of-ice-arrest-at-courthouse-lawsuit-argues-courts-refusal-to-release-footage-is-improper.html.

witnessing the arrest, several adults awaiting similar hearings left before their hearings.[19] In Essex County, a defendant was arrested immediately following trial and deported prior to sentencing, despite an explicit request from the judge to complete sentencing.[20]

In Berks County Pennsylvania, ICE arrested a noncitizen making his child support payments at the courthouse.[21] In Bucks County, ICE detained a man on his way into court to pay for a ticket for driving without a license.[22]

Similarly, in Burlington, Vermont, ICE arrested a man outside a courthouse in 2017 as he was on his way to attend a preliminary hearing for a DUI charge. The prosecution dismissed the charge at the hearing.[23]

Civil immigration arrests pursuant to Defendants' Courthouse Civil Arrest Directive seriously disrupt state judicial proceedings and undermine Amici States' ability to meet our obligation to ensure the orderly administration of justice.

## B.    Residents, Wary of Defendants' Courthouse Activities, Avoid State Courthouses

Residents, fearful of Defendants' Civil Arrest Directive, are avoiding any business at or near courthouses, impeding both criminal prosecutions and ordinary civic business.[24] Particularly in smaller counties, the courthouse is often the place to register a vehicle, renew license-plate tabs, pay taxes, record property transactions, celebrate marriages, seek child custody orders, pay utilities, attend housing court, record wills, pursue small claims, use the law library, and access

---

[19] *ICE in the New Jersey Courts: The Impact of Immigration Enforcement on Access to Justice in the Garden States*, Make the Road New Jersey, 3 (Dec. 2017), https://d3n8a8pro7vhm x.cloudfront.net/maketheroadnj/pages/70/attachments/original/1513001085/ICE_in_the_Courts_ Data_-_final_Dec_10__2017.pdf?1513001085.

[20] *Id.*

[21] *Obstructing Justice: The Chilling Effect of ICE's Arrests of Immigrants at Pennsylvania Courthouses*, Stephen and Sandra Sheller Center for Social Justice, Temple University Beasley School of Law, 6 (Jan. 30, 2019), https://www2.law.temple.edu/csj/cms/wpcontent/uploads/ 2019/02/Obstructing-Justice-rev.pdf.

[22] *Id.*

[23] Kathleen Masterson, *ICE arrests dairy worker en route to Burlington courthouse*, Vt. Public Radio (Mar .16, 2017), https://www.vpr.org/post/ice-agents-arrest-dairy-worker-en-route-burlington-courthouse#stream/0.

[24] *See Washington*, ECF No. 11 ¶ 5.

other county services.[25] In Washington, for example, DHS agents have arrested individuals at the courthouse applying for a domestic-violence protection order, renewing license plates, transferring a vehicle title, paying traffic tickets, and accompanying relatives with business at the courthouse.[26] Even where an individual was involved in state criminal proceedings, many of the defendants targeted for civil courthouse arrest have no prior criminal history and are at court related to a non-violent misdemeanor charge, such as driving without a license.[27]

Immigrants are now fearful to seek protective orders, file for divorce, seek parenting plans, and appear at child welfare hearings.[28] Crime victims and other witnesses are fearful of reporting crimes.[29] And the delay caused by civil immigration arrests "negatively impacts [prosecutors'] ability to successfully prosecute our cases as witnesses move or disappear and their memory of events fades."[30] As a result of Defendants' policy, many victims and survivors weigh the risks and decline to appear in court, even when they have experienced severe violence or harm.[31] When this happens, victims forego justice and remain vulnerable to future violence.[32]

Likewise, the rights of criminal defendants are routinely impaired by Defendants' courthouse arrest policy. When noncitizens are arrested before their criminal proceedings conclude, they are unable to have their day in court and contest the charges against them.[33] Once ICE places a noncitizen in immigration detention, it does not produce the person for future court dates, resulting in the issuance of a bench warrant.[34] These bench warrants, which must issue in order to stop the speedy-trial clock, are a "procedural nightmare" resulting in cases "never get[ting]

---

[25] *See Washington*, ECF No. 12 ¶ 7; ECF No. 13 ¶ 5; ECF No. 19 ¶¶ 4, 6; ECF No. 21 ¶ 2.
[26] *Id.* at ECF No. 14 ¶ 2; ECF No. 25 ¶ 8; ECF No. 31 ¶ 2; ECF No. 36 ¶¶ 10-11; ECF No. 38 ¶ 8.
[27] *Id.* at ECF No. 17 ¶ 5; ECF No. 22 ¶ 7; ECF No. 26 ¶ 13; ECF No. 38 ¶ 8.
[28] *Id.* at ECF No. 10 ¶ 3; ECF No. 17 ¶ 5; ECF No. 22 ¶ 7; ECF No. 26 ¶ 13; ECF No. 28 ¶¶ 12, 14; ECF No. 32 ¶¶ 5-6; ECF No. 38 ¶ 5; ECF No. 38 ¶ 8.
[29] *Id.* at ECF No. 44 ¶ 14; ECF No. 46 ¶ 5.
[30] *Id.* at ECF No. 47 ¶ 18.
[31] *Id.* at ECF No. 10 ¶¶ 4-5; ECF No. 12 ¶ 13; ECF No. 24 ¶¶ 3-10.
[32] *Id.* at ECF No. 10 ¶ 4; ECF No. 28 ¶ 14; ECF No. 33 ¶ 10; ECF No. 47 ¶ 10.
[33] *Id.* at ECF No. 13 ¶ 5; ECF No. 17 ¶ 21; ECF No. 27 ¶ 14; ECF No. 30 ¶ 17.
[34] *Id.* at ECF No. 38 ¶ 14; ECF No. 47 ¶ 18.

resolved."[35] They also frequently "expose [accused persons] to additional criminal charges for failing to appear . . . which carry grave immigration consequences."[36] Because Defendants' policy results in bench warrants and failure-to-appear charges "for clients who were not missing court voluntarily,"[37] it deeply interferes with the right to a fair trial.

In Oregon, key witnesses have refused to testify for fear of being arrested by ICE.[38] Residents have declined to report sexual assault to the authorities for fear of being deported.[39] Noncitizens endure domestic violence rather than report it or seek a restraining order for fear of arrest and deportation.[40]

In Massachusetts, the *Ryan* court noted that "noncitizens are reluctant to attend court in any capacity" as a result of Defendants' courthouse arrest policy.[41]

In New Jersey, legal and social service providers report a decrease in noncitizens seeking assistance for domestic violence or family issues.[42] A survey by a coalition of New Jersey legal service organizations of legal and social service providers showed that, as a result of residents' fear of ICE presence at courthouses, 78% have had noncitizen clients who were scared to attend criminal court, 62% have had noncitizen clients withdraw or fail to pursue orders of protection, 56% have had noncitizen clients refuse to attend municipal court, 55% have had noncitizen clients fail to appear in municipal or criminal court, and 55% have had noncitizen clients fail to file petitions or complaints.[43]

Defendants' policy has had a profound effect on Amici States' residents' access to the courts, and has undermined public safety by discouraging residents from reporting crime or abuse and interfering with the efforts of state prosecutors to prosecute crime.

---

[35] *See Washington*, ECF No. 26 ¶ 8.
[36] *Id.* at ECF No. 27 ¶ 14.
[37] *Id.* at ECF No. 45 ¶ 9.
[38] Decl. of Carl Macpherson ¶ 8.c. (a copy of the declaration, from the Oregon Petition, is on file with counsel).
[39] Decl. of McKenzie Harker ¶ 9 (*Id.*).
[40] Decl. of Bridget Cooke ¶ 5 (*Id.*).
[41] *Ryan*, 382 F. Supp. 3d at 151.
[42] *ICE in the New Jersey Courts*, *supra* note 19 at 2–3.
[43] *Id.*

C.      **The Tenth Amendment Prohibits Defendants From Impairing New York's Sovereign Judicial System and Usurping State Court Facilities**

The Constitution reserves and protects states' authority to administer "all the functions essential to separate and independent existence." *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991) (quoting *Texas v. White*, 7 Wall. 700, 725 (1869)). Maintenance of a fair, orderly, and effective judicial system is a state function of the highest order. *See Gregory*, 501 U.S. at 472 (state has "a legitimate, indeed compelling, interest" in maintaining a fully capable judiciary); *Younger v. Harris*, 401 U.S. 37, 43 (1971) ("Since the beginning of this country's history," Congress has "manifested a desire to permit state courts to try state cases free from interference by federal courts"). A state's police and prosecutorial powers are equally critical sovereign functions. *See, e.g., Gonzales v. Oregon*, 546 U.S. 243, 270 (2006) (states have "great latitude under their police powers . . . as to the protection of the lives, limbs, health, comfort, and quiet of all persons"); *Bond v. United States*, 572 U.S. 844, 858 (2014) ("Perhaps the clearest example of traditional state authority is the punishment of local criminal activity.").

The Tenth Amendment prohibits the federal government from "interfer[ing]" with traditional state functions in a matter that "upset[s] the usual constitutional balance of federal and state powers." *Gregory*, 501 U.S. at 460; *see also Younger*, 401 U.S. at 44 (the "National Government" must pursue its federal interests "in ways that will not unduly interfere with the legitimate activities of the States"). The Tenth Amendment protects states from federal action that is "destructive" of "'residuary and inviolable [state] sovereignty.'" *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 550, 554 (1985) (quoting The Federalist No. 39, at 285 (J. Madison).

Through the Courthouse Civil Arrest Directive, Defendants directly interfere with the judicial systems of New York and the Amici States by staging enforcement operations inside and outside courthouses, seizing parties and witnesses, alarming bystanders, dissuading individuals from appearing, delaying resolution of criminal and civil matters, and creating a general atmosphere of fear for immigrants and their families. *See Murphy v. NCAA*, 138 S. Ct. 1461, 1478 (2018) (Tenth Amendment would never tolerate "federal officers installed in state legislative

chambers and . . . armed with the authority to stop legislators from voting"). "A more direct affront to state sovereignty is not easy to imagine[.]" *Id*. at 1478.

The Constitution also imposes limits on the federal government's "power . . . to secure state compliance with federal objectives." *Nat'l Fed. of Indep. Bus. (NFIB) v. Sebelius*, 567 U.S. 519, 576 (2012). Even Congress – and certainly an agency implementing its own policy – cannot "exert a 'power akin to undue influence'" to force States to do the federal government's bidding. *Id*. at 577 (quoting *Steward Mach. Co. v. Davis*, 301 U.S. 548, 590 (1937)).

Here, and regardless of whether sovereign states choose to participate in the enforcement of federal immigration law, Defendants are not entitled to interfere with the states' sovereign power and obligation to operate open, efficient, safe, and fair judicial systems. The Tenth Amendment forbids Defendants from accomplishing by actual force of arms – intrusion of federal agents into state courthouses, one of the central loci of the state's independent sovereign authority, to physically arrest state residents – what Congress could not achieve through the power of the purse.

## III.   CONCLUSION

For the foregoing reasons, the Amici States join in asking this Court to grant New York's motion for summary judgment to bar Defendants from conducting civil immigration arrests at or near New York courthouses.


Dated:      March 13, 2020
            Seattle, Washington

                              Respectfully submitted,

                              ROBERT W. FERGUSON
                              Washington State Attorney General

                              By:  _s/ Rahul Rao_____
                                   Rahul Rao
                                   Assistant Attorney General
                                   Washington State Attorney General's
                                   Office

9

800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 442-4499
(206) 587-4229 (Fax)
Rahul.Rao@atg.wa.gov

*Counsel for Amici Curiae*

KWAME RAOUL
*Attorney General of Illinois*
100 W. Randolph St., 12th Fl.
Chicago, IL 60601

PETER F. NERONHA
*Attorney General of Rhode Island*
150 South Main Street
Providence, RI 02903

BRIAN E. FROSH
*Attorney General of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

KARL A. RACINE
*Attorney General of the District of Columbia*
441 4th Street NW, Suite 630S
Washington, DC 20001

ELLEN ROSENBLUM
*Attorney General for Oregon*
1162 Court St. NE
Salem, OR 97301

KEITH ELLISON
*Attorney General of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd
St. Paul, MN 55155

HECTOR BALDERAS
*Attorney General of New Mexico*
PO Drawer 1508
Santa Fe, NM 87504

THOMAS J. DONOVAN, JR.
*Attorney General of Vermont*
109 State Street
Montpelier, VT 05609

JOSH SHAPIRO
*Attorney General of the Commonwealth of Pennsylvania*
1600 Arch St., Suite 300
Philadelphia, PA 19103

WILLIAM TONG
*Attorney General of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

GURBIR GREWAL
*Attorney General of New Jersey*
25 Markey Street
Trenton, NJ 08625

MAURA HEALEY
*Attorney General of the Commonwealth of Massachusetts*
One Ashburn Place
Boston, MA 02108

MARK R. HERRING
*Attorney General of Virginia*
202 North 9th Street
Richmond, VA 23219

## CERTIFICATE OF SERVICE

I, Anna Alfonso, hereby certify that the foregoing was electronically filed on March 13, 2020 using the Court's CM/ECF system. I certify that all participants are CM/ECF users and that service will be accomplished via the CM/ECF system.

*s/ Anna Alfonso*
Anna Alfonso
Legal Assistant
